IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| GHODRAT KARAMI, ) | Chapter 7 |
|     Debtor ) | |
| _____ ) | Case No. 09 B 24385 |
| ) | |
| EMPLOYCORP INC., an Illinois Corporation, ) | |
|     Plaintiff, ) | |
| ) | Adversary No. |
| v. ) | |
| ) | Honorable Eugene Wedoff |
| GHODRAT KARAMI, Individually, ) | |
|     Defendant. ) | |
| ) | |

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

NOW COMES the Plaintiff EMPLOYCORP, INC. by its attorneys, Carey, Filter, White & Boland, and for its Complaint against the Defendant GHODRAT KARAMI to determine certain debts of the Defendant to the Plaintiff to be non-dischargeable, respectfully states as follows:

### The Parties

1. At all times hereinafter mentioned, the Plaintiff is an Illinois Corporation, having its principal place of business in Westmont, Illinois, and is engaged in the business of hiring employees for placement at various employment sites.

2. The Defendant is a resident of Cook County, Illinois and is the Debtor in Chapter 7 *Case No. 09 B 24385* pending in this Court.

### Jurisdiction and Venue

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 157(b).

4. Proceedings to determine that dischargeability of particular debts are proceedings pursuant to 28 U.S.C. § 157(b)(2)(I).

5. The actions of the Defendant occurred primarily within the jurisdiction of the United States District Court of Northern District of Illinois and the Defendant herein is located within the Northern District of Illinois.

6. Pursuant to 28 U.S.C. § 1409(a) a core proceeding in the case under the Bankruptcy Code maybe commenced in the District Court in which the bankruptcy case is pending. Venue in this Court is therefore proper.

## Facts

7. Commencing prior to June 13, 2004, Defendant was employed by Plaintiff as a truck driver for Catamount Cargo, an Illinois Corporation, now known as Menzies Aviation, having its principal place of business in Bensenville, Illinois.

8. On June 13, 2004, Defendant, while exiting his truck, purportedly stepped out of the truck, reached for and missed the handle of the truck and fell, injuring his left buttock and leg.

9. Shortly after the fall, Defendant was taken to the emergency room at Alexian Brothers Medical Center where he was evaluated, x-rayed, and prescribed Vicodin and Flexeril.

10. Defendant was then provided with subsequent medical treatment, including:

(a) On or about July 1, 2004, at a neurosurgical consultation at Surgical Neurology Associates, Ltd., Defendant complained of pain from the posterior of his left hip radiating down his left leg to his ankle.

(b) On or about July 15, 2004, at a follow-up appointment at Surgical Neurology Associates, Ltd., Defendant complained that the pain continued to radiate down his left leg and experienced pain in his low back.

(c) On or about July 21, 2004, at an initial physical therapy evaluation at NeuroSport Physical Therapy Rehabilitation, Defendant claimed he was unable to bend forward, had pain in his left lower extremity, and had difficulties sleeping or sitting for long periods of time.

(d) On or about August 19, 2004, Defendant had an epidural steroid injection.

(e) On or about October 4, 2004, at a follow-up appointment at Surgical Neurology Associates, Ltd., Defendant stated that he had pain in the posterior of his left hip, radiating down to his left buttock when walking for more than 5 or 10 minutes or when sitting straight up.

(f) On or about October 15, 2004, Defendant had a second epidural steroid injection.

(g) On or about October 19, 2004, at an initial medical management evaluation at IMPACT Rehabilitation, Defendant stated he experienced pain when sitting for extended times or when bending forward, and was unable to drive his car.

(h) On or about October 28, 2004, at a follow-up appointment at Surgical Neurology Associates, Ltd., Defendant stated the second epidural steroid injection improved his pain, however, the pain returned.

(i) On or about November 2, 2004, at an independent medical examination, Defendant claimed he was still in a great deal of pain, could not drive a car, could not engage in significant walking outside his home, incapable of engaging in outside chores, and could not shop. Defendant stated he a slight improvement, however he could not sit or allow any weight bearing on his left leg.

11. On or around September 1, 2004, Plaintiff requested that Defendant return to work, but Defendant refused, stating he was unable to resume his work as a truck driver.

12. After September 1, 2004, Plaintiff conducted subsequent investigations of Defendant by means of surveillance video and additional independent medical examinations.

13. Despite Defendant's statements concerning his inability to resume work duties and contrary to complaints of continued pain, inability to walk or sit for 5 minutes without experiencing pain, inability to bend forward, inability to drive, inability to walk outside, and the inability to participate in outside chores, Defendant was in fact capable of carrying on normal activities in that:

(a) On or about September 22, 2004, Defendant was seen driving a car.

(b) On or about October 13, 2004 and October 14, 2004, Defendant was seen swinging a pickax, breaking a tree stump, and lifting pieces of wood.

(c) Around mid- to late- October, 2004, Defendant was seen moving freely about the exterior of his home, ambulating normally, raking leaves, squatting, filling plastic bags with raked leaves, and bending in a normal manner.

14. That after a consultation with the independent medical examiner, Dr. Marshall Matz and after Dr. Matz's review of surveillance video of Defendant, Dr. Matz believed that Defendant's activities as shown on the surveillance video suggested malingering and there was

no other way Dr. Matz "could explain the discrepancy in [Defendant's] claimed physical incapacity and what he has shown to be doing, over lengthy periods of time on various days . . . [Defendant's] four and a half months of absence from work compared with what is shown on these video tapes suggest insurance fraud." (See Dr. Marshall Matz November 5, 2004 letter attached hereto as Exhibit A.)

15. On or about November 23, 2004, Defendant returned to work, returned to duties which required no physical activity, complained of a sore back, and left the premises before the end of his shift.

16. Plaintiff paid for certain items on behalf of Defendant, including:

(a) Defendant's medical expenses which covered follow-up doctor examinations and independent medical examinations, MRI Scans, epidural steroid injections, and physical therapy from the date of the purported incident to January 23, 2009, totaling $9,492.60.

(b) Defendant ceased working from the date of his incident and has collected bi-weekly Indemnity checks (total temporary disability) from Plaintiff, totaling $5,035.44.

(c) Plaintiff has incurred attorney's fees from September 15, 2005 to January 23, 2009 totaling $83,454.67.

(d) Plaintiff has incurred miscellaneous costs and expenses totaling $13,595.94.

17. Defendant represented to Plaintiff that Defendant was unable to walk or sit for more than 5 minutes without experiencing pain, unable to bend forward, unable to drive, unable to walk outside, unable to participate in outside chores, and unable to work, and as such, the medical expenses and total temporary disability payments were procured from Plaintiff by fraud on the part of Defendant.

18. On or about April 1, 2005, Plaintiff filed a Complaint in the Circuit Court of Cook County sounding in Fraud and Insurance Fraud under the Illinois Insurance Fraud Act, 720 ILCS 5/46-5(a) seeking damages in an amount in excess of $100,000.00 plus costs and attorneys fees as allowed by statute. Said action remains pending.

19. On or about July 3, 2009, Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code thereby staying the Plaintiff's state court action.

### Count I - Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A)

20. Paragraphs 1 through 19 are hereby re-alleged and incorporated by reference.

21. The representations made by Defendant regarding his inability to walk or sit for more than 5 minutes without experiencing pain, his inability to bend forward, his inability to drive a car, his inability to walk outside, and his inability to participate in outside chores, were false.

22. Defendant made the representations with knowledge of their falsity, with the intent that Plaintiff should believe them, and should rely and act on them, and should be deceived and defrauded.

23. Plaintiff reasonably believed and relied on the misrepresentations, and so believing and relying, was induced to, and did, pay Defendant's medical expenses and total temporary disability payments and other expenses which Plaintiff would not have done had it known that the representation was false.

24. As a result, Plaintiff suffered damages of $111,578.65 from payment of Defendant's medical expenses, total temporary disability, attorney's fees, and other miscellaneous costs and expenses. Defendant received certain of these funds and the benefit of funds paid to third party medical providers as a result of the false representation to the Plaintiff.

25.     Defendant's conduct constitutes actual fraud and Insurance Fraud as hereinafter set forth.

26.     The Illinois Insurance Fraud Act, 720 ILCS 5/46-5(a), in pertinent part, states:

"A <u>person who knowingly</u> obtains, attempts to obtain, or causes to be obtained, <u>by deception</u>, control over the property of any insurance company . . . <u>by the making of a false claim</u> or by causing a false claim to be made <u>to a self-insured entity intending to deprive</u> an insurance company or <u>self-insured entity permanently of the use and benefit of that property, shall be civilly liable</u> to the insurance company or the self-insured entity that paid the claim or against whom the claim was made or to the subrogee of that insurance company or self-insured entity in an amount equal to either 3 times the value of the property wrongfully obtained or, if no property was wrongfully obtained, twice the value of the property attempted to be obtained, whichever amount is greater, <u>plus reasonable attorneys fees</u>." (Emphasis supplied.)

27.     Defendant falsely represented to Plaintiff his inability to walk or sit for more than 5 minutes without experiencing pain, his inability to bend forward, his inability to drive a car, his inability to walk outside, and his inability to participate in outside chores, all with the intention of defrauding Plaintiff.

28.     Defendant made a claim to Plaintiff for total temporary disability in the amount of $5,035.44 upon which Plaintiff paid $5,035.44 which claim was grossly excessive and false, in an attempt to fraudulently obtain money from Plaintiff, who is self-insured, in violation of Section 5/46-5 of the Illinois Insurance Fraud Act.

29.     Defendant received medical benefits in the amount of $9,492.60 which benefits were derived from Defendant's false claim in an attempt to fraudulently obtain benefits from Plaintiff, who is self-insured, in violation of Section 5/46-5 of the Illinois Insurance Fraud Act.

30.     Pursuant to the provisions of Section 5/46-5, Defendant is liable to Plaintiff for the amount of $43,584.12 ($15,106.32 for total temporary disability plus $28,47 7.80 for medical

benefits) which represents three times the amount paid as a result of his grossly excessive and fraudulent claim. In addition, Plaintiff can recover attorneys' fees and is claiming costs and expenses for a total amount due of $140,634.73 less a partial payment of $13,135.00 as hereinafter set forth, leaving a balance due of $127,499.73.

31. The DuPage County States Attorney indicted Defendant under the Illinois Insurance Fraud Act, to which Defendant pled guilty and was convicted of Insurance Fraud. A Criminal Sentence Order was entered on October 8, 2008 by Judge Peter J. Dockery in the 18th Judicial Circuit Court, DuPage County, in *People of the State of Illinois v. Ghodrat Karami,* case number 2007 CF 001547-002 (see Criminal Sentence Order attached hereto as Exhibit B), wherein Defendant plead guilty to Insurance Fraud in violation of 720 ILCS 5/46-1. Pursuant to the Criminal Sentence Order, Defendant has reimbursed Defendant the sum of $13,135.00

WHEREFORE, Plaintiff, Employcorp, Inc. prays this Court enter judgment against Defendant Ghodrat Karami as follows:

(a)  in the amount of $127,499.73 plus interest at 5% from September 15, 2004 to date of judgment, plus Plaintiff's attorneys' fees and costs;

(b)  said judgment to be non-dischargeable in its entirety under §523(a)(2)(A) of the Bankruptcy Code; and

(c)  such other and further relief as the Court deems equitable and appropriate.

                                    Respectfully submitted,
                                    EMPLOYCORP, INC.

                                    By:___/s/ F. Kevin Murnighan____
                                         One of Its Attorneys

Edmund P. Boland ARDC #:0246522
F. Kevin Murnighan ARDC #: 1960822
Emily A. Koch ARDC#: 6284935
CAREY, FILTER, WHITE & BOLAND
33 W. Jackson Blvd., 5th Floor
Chicago, IL 60604
(312) 939-4300

MARSHALL I. MATZ, M.D. & DAVID M. SHENKER, M.D., S.C.

ST. ELIZABETH PROFESSIONAL BUILDING

SUITE 306

1431 NORTH WESTERN AVENUE

CHICAGO, ILLINOIS 60622

(312) 332-2226

FAX (773) 276-1197

NEUROSURGERY
MARSHALL I. MATZ, M.D., F.A.C.S.

NEUROLOGY
DAVID M. SHENKER, M.D.

CONSULTANT IN NEUROPSYCHOLOGY
CHRISTOPHER GROTE, PH.D.

November 5, 2004

Cambridge Integrated Services
175 West Jackson
Suite 1000
Chicago, IL 60604

Attn.: Elizabeth Luna

Re:  213302
     Employco Group
     Ghodrat Karami

Dear Ms. Luna:

I have written to you regarding my most recent assessment of Mr. Ghodrat Karami that having taken place on November 3, 2004. I was subsequently provided with videotape surveillance of a variety of activities showing Mr. Karami actively engaged in activities far beyond what he claimed to be capable of doing at the time of his visit on August 3, 2004 and at the time of his most recent evaluation on November 3, 2004.

Those videotapes are extremely lengthy. Mr. Karami in mid to late October is seen to be ambulating normally, raking leaves, moving freely about the exterior of a home, squatting, filling plastic bags with the raked leaves, and bending in a normal manner. The most egregious discrepancy with respect to his claim of physical incapacity including statements that he made on November 3, 2004, regarding his physical incapacity to drive a car or walk about the external areas of his premises and unable to do any shopping involve videotape activities of October 26, 2004, when he is repetitively swinging a pickax, breaking up what appears to be the


EXHIBIT A

-2-

Cambridge Integrated Services                               November 5, 2004

                                  Re: Ghodrat Karami

stump of a tree, bending and lifting pieces of wood and doing other activities such as repetitively raking and shoveling.

These activities would indicate that Mr. Karami's complaints have no basis and are consistent with malingering. There is no other way that I can explain the discrepancy in his claimed physical incapacity and what he was shown to be doing over lengthy periods of time on various days. You will recall that his job activities involved driving a truck and what is seen on these videotapes clearly indicate that driving a truck is well within his physical capacity. His four and a half months of absence from work compared with what is shown on these videotapes suggest insurance fraud.

                                  Sincerely yours,

                                  Marshall I. Metz, M.D.

MIM:kj
cc: Impact Rehabilitation

| CRIMINAL SENTENCING ORDER | SEE BACK | 2007CF001547-142 |
|---|---|---|

**STATE OF ILLINOIS**  **UNITED STATES OF AMERICA**  **COUNTY OF DU PAGE**
IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT

PEOPLE OF THE STATE OF ILLINOIS

2007CF001547-0002
CASE NUMBER

VS.

DCN NUMBER

GHODRAT KARAMI
DEFENDANT

☐ Resentence

FILED 08 OCT -8 AM 11:10
CLERK OF THE 18TH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS

File Stamp Here

**CRIMINAL SENTENCE ORDER**

Plea of GUILTY on 10-8-08 ~~08/09/2007~~
Finding of GUILTY on 10/08/2008 by COURT
Sentence is AGREED

The Court hereby orders that the Defendant is sentenced as follows on the amended charge of
INSURANCE FRAUD UNDER $300
In violation of 720 ILCS 5/46-1-A1                     a Class A   MISDEMEANOR

Conviction is entered.
Defendant is sentenced to Probation for a term of 2yr(s). During that time the
defendant shall:
1. Not violate any criminal statute of any jurisdiction.
2. Immediately notify your probation officer of any arrest.
3. Report to, or appear before such person or agency as directed by the court.
4. Appear before the Court in person as directed by your probation officer or the
   Court.
5. Not leave the State without the consent of the Court, *except Defendant may leave Illinois for work purposes.*
6. Permit the probation officer visits at your home or elsewhere to the extent
   necessary to discharge the officer's duties.
7. Inform your probation officer in writing, within 7 days, of any change of
   employment or place of residence, and you cannot change your place of residence
   to outside of DuPage County without prior approval of your probation officer.
8. Consent to the Department of Probation and Court Services to divulge information
   to comply with this court order.
9. Refrain from using any illicit drug.
10. Refrain from possessing a firearm or other dangerous weapon.
11. Comply with sanctions imposed by the Probation Department for any violation of
    the terms and conditions of this order consistent with administrative rule.
12. Pay $1,357.00 based on a fine of $500.00. This includes all fines, fees, costs,
    penalties and assessments. The only additional fees owing are $25.00 a month for
    probation which will accumulate until the end of your term.

**CERTIFICATION**
I, Chris Kachiroubas, Clerk of the 18th Judicial Circuit Court, DuPage County, Illinois, do hereby certify this to be a true and correct copy as it appears from the records and files in my office. IN WITNESS WHEREOF, I have hereunto set my hand and caused to be affixed the Seal of the said Court.
DATE OCT 0 9 2008

CHRIS KACHIROUBAS, CLERK OF THE 18TH JUDICIAL CIRCUIT COURT ©
WHEATON, ILLINOIS 60189-0707                                       SEE BACK

Chris Kachiroubas
CHRIS KACHIROUBAS, Clerk
BY _____ Deputy Clerk

131

EXHIBIT B

CRIMINAL SENTENCING ORDER   2007CF001547- 0002                              2007CF001547-142

13. Pay all fines, costs, fees, and assessments in full not less than 60 days before the end of probation in equal monthly installments.
14. Make a final report to court on 10/0?/2010 at 09:00 AM in courtroom 4012.
15. Perform 100 hours of community service.
16. Promptly undertake evaluations as determined by the Probation Department and thereafter sucessfully complete such treatment, therapy, counseling and/or remedial education as ordered by the Probation Department.
17. Pay $13,135.00 in restitution to EMPLOYCO GROUP, ~~in equal monthly installments or as ordered by the Court. Such payments must be made in full not less than 60 days prior to the end of the probation term. All payments are to be made to the Circuit Court Clerk. The office of STATES ATTORNEY is responsible for monitoring this restitution.~~
18. Pay $500.00 to the Anti-Crime Commission.
Nolle Pros: counts 0001
Evidence shall be PRESERVE UNTIL FURTHER ORDER OF COURT.

RESTITUTION to be PAID IN FULL ON 10/08/08, DEFENDANT SUBMITTED TCF OFFICIAL BANK CHECK #300147450 IN THE AMOUNT OF $13,135.00 TO DUPAGE COUNTY CIRCUIT CLERK RESTITUTION DIVISION FOR PAYMENT IN FULL FOR RESTITUTION.

State's Attorney:   HELEN KAPAS-ERDMAN
Defense Attorney:   JEROME F MARCONI

*signature: PJ Dockery*
JUDGE PETER J DOCKERY

10/08/2008
Date